UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEMETRIUS ALPHONSO JACKSON,

        Plaintiff,

v.

UNKNOWN NELSON et al.,

        Defendants.
_____/

Case No. 2:18-cv-122

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Nelson, Michelli, Cepline, Sorenson, Taskila, Yon, and Olson.

## Discussion

    I.    Factual Allegations

Plaintiff Demetrius Alphonso Jackson is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Luce County,

Michigan. The events about which he complains, however, occurred at the Ojibway Correctional Facility (OCF) in Gogebic County, Michigan. Plaintiff sues the following MDOC employees at OCF: Warden Kathleen Olson; Deputy Warden Mike Yon; Inspectors Kristopher Taskila and Unknown Michelli; Acting Lieutenant Unknown Happala;[1] Sergeant Unknown Cepline; Corrections Officer Unknown Nelson; and Warden's Administrative Assistant Micki Sorenson.

Plaintiff alleges that on February 20, 2018, he was approached by Officer Nelson, who requested a "shakedown." (Compl., ECF No. 1, PageID.7.) Plaintiff complied by turning around and putting his arms out to the side. Nelson patted Plaintiff down, placing his hands on Plaintiff's inner thighs and moving toward Plaintiff's buttocks. Nelson allegedly squeezed the "outer region" of Plaintiff's buttocks "in a manner that was not normal and was more in line with affection." (*Id.*, PageID.8.) Plaintiff protested, saying, "You are squeezing my butt!" (*Id.*) Nelson told him to "Shut up! Report it!" (*Id.*) Nelson then proceeded back "to the front area and once again swiped against Plaintiff's genitals (i.e. penis)." (*Id.*)

The following day, Plaintiff filed a PREA[2] grievance about Nelson's conduct. Inspector Taskila subsequently interviewed Plaintiff about this grievance. Taskila told Plaintiff that the shakedown lasted 7 seconds. Plaintiff responded, "I see how a woman feels when she is taken advantage of or raped." (*Id.*, PageID.9.) Taskila told Plaintiff that he would have to be separated from Officer Nelson. Plaintiff did not believe that he should be moved because he did not do anything wrong. Nevertheless, he was moved later that day.

Over the next several days and weeks, Plaintiff worried that other officers would retaliate against him. In early March, Plaintiff called his son and asked him to call the Michigan

---

[1] Lieutenant Happala's name is spelled "Haapala" in documents attached to Plaintiff's complaint. (*See* Misconduct Report, ECF No. 1-1, PageID.22.)
[2] PREA is an acronym for the Prison Rape Elimination Act, 34 U.S.C. §§ 30301 et seq.

state police. His son did so. On March 12, Plaintiff learned that a Michigan state trooper would come to the prison to speak with Plaintiff the following day.

On March 13, Inspector Taskila summoned Plaintiff to his office and told Plaintiff he was very upset that Plaintiff had called the PREA hotline and had his son call the Michigan state police. Taskila told Plaintiff, "Well I've shown the Trooper the video of the incident and he felt there's no need to speak to [you]." (*Id.*, PageID.10.) Plaintiff wrote a grievance on Taskila that same day, claiming that Taskila retaliated against Plaintiff by dissuading the trooper from interviewing him.

On March 15, Plaintiff met with Inspector Michelli, who informed Plaintiff that he heard from the PREA hotline that Plaintiff had called them again. Michelli asked Plaintiff if everything was okay. Plaintiff responded that Taskila had treated him "unfairly." (*Id.*)

On March 16, Plaintiff obtained a notarized statement from another prisoner who witnessed the pat-down search by Nelson.[3] Apparently, on March 20, Taskila concluded that Plaintiff's allegations were unfounded. (*See* Prisoner Notification of Sexual Abuse and Sexual Harassment Investigative Findings and Action, ECF No. 1-1, PageID.26.) That same day, Lieutenant Happala told Plaintiff that he would be receiving a misconduct for the PREA grievance that he filed against Officer Nelson. Plaintiff subsequently filed a regular prisoner grievance on Defendants Taskila, Michelli, Happala, Olson, and Yon for conspiracy and retaliation.

On March 21, Sergeant Cepline interviewed Plaintiff regarding the "false" misconduct ticket Plaintiff received as a result of the PREA grievance. (*See* Misconduct Report, ECF No. 101, PageID.22.) The allegedly false ticket charged Plaintiff with "Interference with the

---

[3] A notarized statement by prisoner Lewis is attached to the complaint, but it is not sworn. (ECF No. 1-1, PageID.24.) According to Lewis, Officer Nelson moved his hand down Plaintiff's body to Plaintiff's shorts, and then Plaintiff stated, "Did you grab my butt?" (*Id.*) Nelson responded, "Yes, I did." (*Id.*)

Administration of Rules" for filing a PREA grievance on Defendant Nelson that contained "deceptive information." (*Id.*) Plaintiff subsequently wrote a grievance on Defendants Olson, Yon, Taskila, Michelli, Sorenson, Cepline, Nelson, and Happala, alleging a "joint venture" between them. (Compl., PageID.11.)

Officer Perttu (who is not a defendant in this action) held a hearing on the misconduct ticket on March 27, and determined that Plaintiff had provided deceptive information. Perttu found Plaintiff guilty and issued a sanction of 5 days in toplock and 30 days of loss of privileges. (Class II and III Misconduct Hr'g Report, ECF No. 1-1, PageID.34.)

On March 29, Plaintiff filed another PREA grievance, complaining that Defendants Olson, Yon, Nelson, Taskila, Michelli, Happala, and Sorenson were involved in a conspiracy to retaliate against Plaintiff for writing the first PREA grievance.

Plaintiff asked for copies of the investigation records for the first PREA grievance, but Taskila denied his request, stating that the details of the investigation were confidential.

Based on the foregoing allegations, Plaintiff claims that Defendant Nelson inflicted unnecessary pain in violation of the Eighth Amendment. He further contends that Defendants Happala, Taskila, Yon, Olson, and Cepline worked in concert to subject Plaintiff to a misconduct sanction in violation of his rights under the First Amendment. He also contends that Defendants Taskila, Michelli, Yon, Olson, and Sorenson conspired to cover up the "sexual assault" of Plaintiff by Defendant Nelson. (Compl., PageID.15.)

As relief, Plaintiff seeks punitive and compensatory damages of $500,000 and asks the Court to expunge the "false" misconduct conviction in his file. (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Insufficient Allegations

#### 1. Defendants Olson, Yon & Sorenson

Plaintiff makes no specific allegations of misconduct by Defendants Olson, Yon, or Sorenson. Their names are mentioned only when Plaintiff is lumping them together with other individuals. For instance, Plaintiff alleges that Olson, Yon, and Sorenson conspired with, or acted in concert with, other defendants (Compl., PageID.11, 13, 15), but Plaintiff does not allege any facts about the actual conduct of Defendants Olson, Yon, and Sorenson.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in

the events leading to his injuries"). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff has not alleged any particular action by Defendants Sorenson, Yon, or Olson.

Furthermore, none of these Defendants is liable simply because they had supervisory authority over other government officials. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Sorenson, Yon, or Olson engaged in any active unconstitutional behavior. Accordingly, they will be dismissed for failure to state a claim.

2. Defendant Michelli

Plaintiff's only allegation against Defendant Michelli is that Michelli investigated a grievance that Plaintiff filed against Taskila and subsequently asked Plaintiff how he was doing. Plaintiff allegedly told Michelli that Taskila treated him unfairly. These allegations do not state a

claim. As indicated with respect to Defendants Sorenson, Yon, and Olson, Defendant Michelli is not liable for the conduct of Defendant Taskila, and is not liable simply because he learned about the conduct of Taskila or other officers in a grievance or complaint and failed to take action to correct that conduct.

Plaintiff claims that Michelli conspired with other Defendants to cover up Defendant Nelson's "sexual assault," and conspired with other Defendants to retaliate against Plaintiff, but these allegations are wholly conclusory. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff does not allege what action Michelli took to further these conspiracies. Nor does he allege any facts suggesting an agreement between Michelli and other Defendants to deprive Plaintiff of a federal right. Thus, Plaintiff's assertion of a conspiracy does not save his complaint against Michelli.

To the extent Plaintiff asserts that Michelli did not adequately investigate Plaintiff's grievances against Nelson or Taskila, Plaintiff does not state a claim. Prisoners have a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), but that right does not require the government to respond to, or grant any relief on, a petition for redress. *Smith v. Arkansas State Hwy. Employees, Local 1315*, 441 U.S. 463, 464-65 (1979); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."). Moreover, a prisoner does not have a constitutionally-protected interest in an inmate grievance procedure or the right to an effective procedure. *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing cases). Thus, to the extent that Plaintiff is dissatisfied with Michelli's investigation of his grievances and complaints, Plaintiff fails to state a claim upon which relief may be granted. *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (prisoner failed to state a claim based upon failure to investigate grievance). Accordingly, Plaintiff also fails to state a claim against Defendant Michelli.

3. Defendant Cepline

Plaintiff merely alleges that Defendant Cepline interviewed Plaintiff regarding a "false" misconduct ticket issued against Plaintiff by Officer Happala. These allegations do not state a claim. Plaintiff's assertion that Cepline conspired with other Defendants to retaliate against Plaintiff is wholly conclusory. Even assuming that the misconduct ticket and resulting sanction would support a retaliation claim, there are no allegations from which to infer that Cepline was involved in issuing that ticket or determining that Plaintiff was guilty of it, let alone that Cepline agreed with other Defendants to deprive Plaintiff of a federal right and took action to further that conspiracy. Accordingly, Plaintiff also fails to state a claim against Defendant Cepline.

9

## B. Eighth Amendment

Plaintiff alleges that Defendant Nelson conducted a pat-down search that involved contact with Plaintiff's inner thighs, a squeeze of Plaintiff's buttocks, and one or two "swipes" of Plaintiff's genitals. These allegations do not state a claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

However, not "every malevolent touch by a prison guard gives rise to a[n Eighth Amendment] cause of action." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation omitted). The "'core judicial inquiry' [is not] the extent of the injury," but "whether [the force used] was nontrivial and "was applied . . . maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy,* 559 U.S. 34, 39 (2010) (quoting *Hudson*, 503 U.S. at 7).

The Court of Appeals has, on several occasions, examined circumstances even more egregious than those alleged by Plaintiff and found no Eighth Amendment violation. *See,*

*e.g., Solomon v. Mich. Dep't of Corrs.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis and pressing an erect penis into the prisoner's buttocks, do not rise to the level of a constitutional violation); *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that officer grabbed the detainee's genitals and "squeezed them really hard" during a pat-down search is too "subjective and vague" to state a claim); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (prisoner's claim that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If grabbing a prisoner's genitals during a pat-down search is not sufficient to support an Eighth Amendment claim, then Plaintiff's allegation that Nelson squeezed the side of his buttocks and briefly touched his penis cannot be sufficient to state a claim. Indeed, any pat-down search in the prison context might reasonably involve the sort of brief contact with a prisoner's genitals that Plaintiff alleges in his case. In short, nothing in Plaintiff's complaint

11

suggests an unnecessary and wanton infliction of pain upon Plaintiff by Defendant Nelson. Accordingly, Plaintiff fails to state a claim against Defendant Nelson.

**C. Retaliation**

Plaintiff claims that Defendants Taskila and Happala retaliated against him for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

1. Defendant Taskila

Taskila conducted an investigation of the incident involving Defendant Nelson and found "no evidence" to support Plaintiff's PREA grievance. (ECF No. 1-1, PageID.26.) He also told Plaintiff that Plaintiff needed to be moved to another unit in the prison facility, denied Plaintiff's request for records of the PREA investigation, and spoke to a Michigan police officer about Plaintiff's allegations against Nelson.

Taskila apparently told Plaintiff he needed to be moved to another unit in the prison in order to separate Plaintiff from Officer Nelson. Assuming Taskila was the one who made the

decision to move Plaintiff, that decision does not give rise to a retaliation claim. One of the requirements for a retaliation claim is an adverse action by the defendant, i.e., an action that is "*capable* of deterring a person of ordinary firmness" from engaging in protected conduct. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Taskila did not deprive Plaintiff of anything by having him moved to another location in the prison. Plaintiff does not have a right to be housed in a particular area of a prison facility, or in any particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ."); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976).

Moreover, transfers from one prison to another typically are not sufficiently adverse to give rise to a retaliation claim. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.") (internal quotation marks omitted). For the same reason, a transfer from one location in a prison to another location in the same prison ordinarily should not deter a prisoner from engaging in protected conduct. *See Meeks v. Schofield*, 625 F. App'x 697, 702 (6th Cir. 2015) (finding that prisoner's transfer from one unit to another was not an adverse action, relying on *Siggers-El*).

"[A] prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). For instance, transferring a prisoner to a lock-down unit may rise

13

to the level of an adverse action. *Id.* at 475. Here, Plaintiff does not allege any negative consequences as a result of his transfer within OCF. Consequently, he does not state a retaliation claim against Taskila with respect to that transfer.

Plaintiff's assertion that Taskila's findings from the PREA investigation and/or his refusal to provide records from that investigation were motivated by Plaintiff's protected conduct is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts whatsoever to support his conclusion that Defendant Taskila's actions with regard to the PREA investigation were motivated by Plaintiff's protected conduct.

Moreover, to the extent Plaintiff alleges that Taskila failed to conduct an adequate investigation, Plaintiff does not state a claim. As indicated with respect to Defendant Michelli, Plaintiff does not have a federal right to an effective investigation of his grievances.

In addition, Plaintiff fails to state a claim with regard to Taskila's conversation with the Michigan state police officer. Taskila allegedly dissuaded the officer from speaking with Plaintiff. This was not an adverse action. It did not change Plaintiff's circumstances or deprive him of anything to which he was entitled. If Plaintiff thought that further investigation by the police was necessary, he could have contacted the police again.

Finally, Plaintiff's claim that Defendant Taskila conspired with other Defendants to retaliate against Plaintiff is wholly conclusory. Plaintiff's allegations do not support a plausible inference of an agreement between Taskila and other Defendants to deprive Plaintiff of a federal right. Thus, Plaintiff does not state a claim against Taskila.

### 2. Defendant Happala

At this stage of the proceedings, the Court finds that Plaintiff states at least one claim against Defendant Happala. Happala apparently charged Plaintiff with a misconduct for filing a PREA grievance alleging that Nelson "squeezed his butt region and swipe[d] his hand against his gen[it]als and penis[.]" (*See* Misconduct Report, ECF No. 1-1, PageID.22.) According to the misconduct report, Plaintiff's grievance contained "misleading information." (*Id.*) However, Plaintiff claims that the misconduct report was false and that Happala retaliated against him for filing the PREA grievance.

If Defendant Happala can show that Plaintiff's grievance was, in fact, deceptive or misleading, and/or that Happala issued the misconduct ticket for that reason, then Plaintiff might lose his retaliation claim. The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. Moreover, "[a]busive or manipulative use of a grievance system would not be protected conduct." *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012). Thus, to the extent Plaintiff's grievance was false or deceptive, it might not qualify as protected conduct.

Alternatively, Happala might be able to demonstrate that he issued the misconduct report for legitimate reasons—i.e., to protect the integrity of the grievance process—rather than to retaliate against Plaintiff. However, both of the foregoing responses to Plaintiff's claim depend somewhat upon the truth of the assertions in Plaintiff's PREA grievance, or upon the truth of the misconduct report. Those are issues of fact that the Court cannot adjudicate at this time. For the time being, the Court must accept Plaintiff's allegations in the complaint as true. Thus, the Court must accept Plaintiff's allegation that he filed a true and legitimate grievance about the manner in which he was searched. Also, the Court must accept his allegation that the misconduct report against him, which was undeniably motivated by the grievance, was false. Thus, Plaintiff states a viable claim against Happala.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Nelson, Michelli, Cepline, Sorenson, Taskila, Yon, and Olson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Defendant Happala is the only remaining Defendant.

An order consistent with this opinion will be entered.


Dated:   November 30, 2018                      /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge