UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Demetrius Jackson #477221,

Case No. 2:18-cv-00122

Plaintiff,

Hon. Paul L. Maloney
U.S. District Judge

v.

DENNIS HAPPALA, et al.,

Defendants.

_____/

**REPORT AND RECOMMENDATION**

I.   **Introduction**

This is a civil rights action brought by state prisoner Demetrius Jackson pursuant to 42 U.S.C. § 1983.  Jackson's remaining claim is an allegation that Defendant Lt. Dennis Happala retaliated against him for exercising his First Amendment rights.[1]  (ECF No. 1, PageID.11.)

Defendant Happala has moved for summary judgment and Jackson responded. (ECF Nos. 22 and 29.)  The undersigned has reviewed the pleadings and associated documents, and respectfully recommends that the Court (1) grant Defendant Happala's motion for summary judgment (ECF No. 22), and (2) dismiss Jackson's claims against Happala without prejudice.

---

[1]      U.S. District Judge Maloney dismissed Jackson's other claims in the Court's screening opinion. (*See* ECF Nos. 6 & 7.)

## II.     Summary of Allegations and Relevant Facts

Jackson's claims begin with a complaint against Correctional Officer (CO) Nelson.  This initial complaint triggered a sequence of complaints, grievances and misconduct reports that ultimately resulted in Jackson's claims against Lt. Happala. Jackson alleges that, on February 20, 2018, while he was housed at Ojibway Correctional Facility (OCF), CO Nelson approached him for a "shakedown." (ECF No. 1, PageID.7.)  During the shakedown, Nelson touched Jackson inappropriately. (*Id.*, PageID.8.)  Jackson likened the inappropriate touching to "a manner that was not normal and was more in line with affection." (*Id.*)

The following day, Jackson filed a Prison Rape Elimination Act (PREA) grievance against Nelson and was interviewed by Inspector Taskila about the grievance. (*Id.*, PageID.8-9.)

Jackson says he called his son to request that his son call the state police about the incident. (ECF No. 1, PageID.9.)  His son did so. (*Id.*)  On March 12, 2018, Jackson learned that an officer with the Michigan State Police would be coming the following day to interview him about the incident. (*Id.*) On March 13, 2018, Inspector Taskila summoned Jackson to his office and told Jackson that he was upset that Jackson called the PREA hotline and that Jackson's son called the State Police. (*Id.*, PageID.9-10.)  Taskila allegedly told Jackson, "Well I've shown the Trooper the video of the incident and he felt there's no need to speak to [you]." (*Id.*, PageID.10.)

Later that day, Jackson filed grievance **OCF-20-18-03-0124-26z**, which complains about Inspector Taskila's alleged conduct preventing the interview. (*Id.*)

2

On March 15, Jackson met with Inspector Michelli, who informed Jackson that he heard from the PREA hotline that Jackson called them again. (*Id.*) Michelli asked Jackson if everything was okay. (*Id.*) Plaintiff responded that Taskila had treated him "unfairly." (*Id.*)

On March 20, Inspector Taskila concluded that Jackson's allegations were unfounded. (ECF No. 1-1, PageID.26.) That same day, Lt. Happala told Jackson that he would be receiving a misconduct for the PREA grievance that he filed against Nelson. (ECF No. 1, PageID.11.) Jackson subsequently filed grievance **OCF-18-03-139-28J** against Defendants Taskila, Michelli, Happala, Olson, and Yon for conspiracy and retaliation. (*Id.*)

Jackson alleges that Happala retaliated against him for engaging in protected activity. (ECF No. 1, PageID.11.) Specifically, Jackson states that Happala charged Jackson with a misconduct ticket for filing a Prison Rape Elimination Act (PREA) grievance against Correctional Officer Nelson. (*Id.*) According to the misconduct report, Plaintiff's grievance contained "misleading information." (ECF No. 1-1, PageID.22.) Jackson was charged with Interreference with the Administration of Rules, which is a Class II misconduct. (*Id.*) After receiving the misconduct ticket, Jackson submitted grievance **OCF-18-03-0139-28J** that alleges that Happala and others retaliated against Jackson for filing the PREA grievance. (ECF No. 1, PageID.11.)

Plaintiff subsequently wrote a grievance on Defendants Olson, Yon, Taskila, Michelli, Sorenson, Cepline, Nelson, and Happala, alleging a "joint venture" between them. (ECF No. 1, PageID.11.)

On March 27, Officer Perttu, who is not a defendant in this action, held a hearing regarding the misconduct ticket and determined that Jackson provided deceptive information.  Perttu found Jackson guilty and issued a sanction of 5 days in toplock (confinement to quarters) and 30 days of loss of privileges. (ECF No. 1-1, PageID.34.)  During Jackson's misconduct hearing, according to the Hearing Report, Jackson never raised the issue of retaliation, but did state, "'[t]his an ongoing issue and is not resolved so you can't hear me on this untiol [sic] it is resolved.'"  (ECF No. 23-3, PageID.167.)

On July 20, 2019, Jackson filed his complaint in the United States District Court for the Western District of Michigan.  (ECF No. 1.)  The Court dismissed all claims but Jackson's retaliation claim against Happala.  (ECF No. 7.)

On March 26, 2019, Happala moved for summary judgment based on Jackson's failure to exhaust administrative remedies.  (ECF No. 22.)  On May 28, 2019. Jackson filed a response to Happala's motion. (ECF No. 29.)

## III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally

6

before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014); *Parker v. Horton*, No. 2:18-CV-00080, 2019 WL 4040616, at *3 (W.D. Mich. July 25, 2019), *report and recommendation adopted,* No. 2:18-CV-80, 2019 WL 4037946 (W.D. Mich. Aug. 27, 2019).

---

[2]      Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## V.     Analysis

Happala argues that Jackson's retaliation claim should be dismissed for failure to exhaust applicable administrative remedies. (ECF No. 23, PageID.154-156.) A review of the records provided shows that during Jackson's misconduct hearing for

---

[3]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

his Interference with the Administration of Rules charge, Jackson failed to raise the retaliation claim. (ECF No. 23-3, PageID.167.) He pled not guilty and stated that "[t]his is an ongoing issue and is not resolved so you can't hear me on this until it is resolved." (*Id.*) A portion of the misconduct hearing report is shown below.



(*Id.*) Jackson mentions an "ongoing issue", but does not indicate what that issue is. It is clear, however, that Jackson did not allege that Happala was retaliating against him.

As explained above, because Jackson received a retaliatory Class II or III misconduct, he was required to file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Heyns*, 2014 U.S. Dist. LEXIS at *13-17. There is no indication in the record that he undertook an appeal.

One of the primary purposes of the exhaustion requirement in 42 U.S.C. § 1997e(a) is to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Here, prison officials did not get that opportunity with regard to Jackson's claims against Happala.

Jackson's use of the grievance process to challenge Happala's actions does not remedy this failure. The record shows that Jackson filed two grievances against Happala.[4] (ECF No. 23-4, PageIDs.177, 182.) In grievance **OCF-18-03-0139-28J**, Jackson alleges that Happala and others retaliated against him for writing a PREA grievance against Correctional Officer Nelson. (*Id.*, PageID.183.) Specifically, Jackson alleges that Happala told him that the investigation into the PREA grievance was complete, and that "they were going to write [Jackson] a misconduct." (*Id.*) The grievance against Happala and others was rejected at Step I pursuant to MDOC PD 03.02.130. (*Id.*, PageID.182.) On appeal to Steps II and III, Jackson reiterated that his allegations in Step I were true.[5] (*Id.*) The rejection was upheld through Step III. (*Id.*, PageID.181-182.)

The second grievance Jackson filed against Happala is identified as **OCF-18-04-0153-27A**. (ECF No. 23-4, PageID.177.) It alleges that Happala and others found

---

[4]   In Jackson's PREA grievance against Nelson, Jackson neither complained about Happala nor did he allege retaliation. (ECF No. 23-4, PageID.180.)

[5]   Despite the attached exhibits (ECF No. 23-4, PageID.181-182), Happala asserts that the grievance was rejected because he "'[d]id not appeal to the next step, filed a new grievance.'" (ECF No. 23, PageID.154.)

Jackson guilty of a Class II misconduct – Interference with the Administration of Rules – in order to cover up Nelson's misconduct. (*Id.*) The second grievance was rejected at Steps I, II, and III because it contained a non-grieveable issue. (*Id.*, PageID. 175-176.)

Happala argues that "[i]mproperly filed grievances do not fulfill the exhaustion requirement." (ECF No. 23, PageID.155.) The undersigned agrees. Pursuant to the PLRA, compliance with prison grievance procedures is all that is required to properly exhaust. *Bock*, 549 U.S. at 218-19. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* (internal quotation marks omitted). In the present case, both grievances against Happala were rejected through Step III for failure to comply with MDOC Policy Directives. A properly rejected grievance cannot be used to exhaust a plaintiff's administrative remedies. *Woodford*, 548 U.S. at 90 (stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"); *Parker v. Keller*, No. 2:17-CV-00102, 2019 WL 4740594, at *4 (W.D. Mich. Aug. 27, 2019), *report and recommendation adopted,* No. 2:17-CV-102, 2019 WL 4737862 (W.D. Mich. Sept. 27, 2019). Due to the noncompliance, the undersigned respectfully concludes that neither grievance was properly exhausted.

In order to exhaust his administrative remedies in this case, Jackson was required to raise the retaliation issue during his misconduct hearing and then in an

appeal of ruling from that hearing.  He failed to do so.  Jackson's reliance on the

MDOC's grievance procedure to address his claim against Happala does not satisfy

the exhaustion requirement because Jackson's grievances were rejected.   The

undersigned concludes that Jackson has failed to exhaust applicable administrative

remedies.

## VI.    Recommendation

The undersigned respectfully recommends that the Court (1) grant Defendant

Happala's motion for summary judgment (ECF No. 22), and (2) dismiss Jackson's

claims against Happala without prejudice.


Dated:   December 11, 2019                                 /s/ *Maarten Vermaat*
                                                           MAARTEN VERMAAT
                                                           U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.
72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR
72.3(b).  Failure to file timely objections may constitute a waiver of any further right
of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*,
474 U.S. 140 (1985).